IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 5:15-CR-00009 |
| | ) | |
| v. | ) | |
| | ) | |
| KLEVER CABRERA-PERALTA, | ) | By:  Michael F. Urbanski |
| Petitioner. | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter is before the court on a Petition for Writ of Error Coram Nobis filed by petitioner Klever Cabrera-Peralta. Petition, ECF No. 26. Cabrera-Peralta challenges his 2015 guilty plea and conviction for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Cabrera-Peralta's pro se petition asserts that his counsel was constitutionally ineffective because he failed to inform him of immigration consequences at the time of his guilty plea.

I.

Cabrera-Peralta, represented by counsel appointed under the Criminal Justice Act, waived indictment and pled guilty pursuant to Fed. R. Crim. P. Rule 11(c)(1)(C) to one count of conspiring to distribute a mixture and substance containing a detectable amount of methamphetamine. Information, ECF No. 1; Waiver of Indictment, ECF No. 4. The written plea agreement provided for an agreed term of imprisonment of 44 months. Plea Agreement, ECF No. 6, at 2.

1

Section C.6. of the plea agreement contained the following notification of deportation consequences as a result of his conviction.

> **6. Deportation**
>
> I understand that, if I am not a citizen of the United States, I may be subject to deportation from the United States as a result of my conviction for the offense(s) to which I am pleading guilty.

Id. at 7. Cabrera-Peralta signed the plea agreement on March 8, 2015.

At the initial appearance and guilty plea hearing conducted on March 25, 2015, Cabrera-Peralta's counsel highlighted that this conviction could affect his client's immigration status. After the government outlined the essential terms of the plea agreement, the court inquired of defense counsel as follows:

> The COURT: Counsel, is that consistent with your understanding of the essential terms of the plea agreement?
>
> MR. NAGY: Yes sir, it is.
> The only thing I would add is Mr. Hoffman did not specifically go over part six of the plea agreement, and I have discussed this with my client that because this is a felony in federal court that his immigration status would be put in jeopardy, and he understands that, and if the Court questions him about it, I believe he will instruct the Court that he and I have discussed that, that he understands that neither myself or anyone else can make him any promises about that at this time.
>
> THE COURT: Including the Court.
>
> MR. NAGY: That's correct.
> And that we have discussed that. Nonetheless, he does wish to enter into the plea agreement with the government.
>
> THE COURT: Thank you for that, Mr. Nagy.
> Is all of that what was represented by Mr. Hoffman and stated by your lawyer – is that consistent with your understanding of the terms of the plea agreement, Mr. Peralta?

2

> THE DEFENDANT: Yes, sir.

Guilty Plea Hr'g Tr., ECF No. 32, at 22-23.

During the plea colloquoy, the court directly addressed Cabrera-Peralta on the immigration consequences of his guilty plea.

> THE COURT: Okay. Now as Mr. Nagy just went over, you understand that by pleading guilty in this case, if the Court accepts the guilty plea and finds you guilty, that can affect your ability to remain in the United States. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It will be up to the immigration authorities to decide what to do, whether or not to deport you or not. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: There's nothing that Mr. Nagy can do about it or the Court can do about it. That is a totally separate proceeding. But this guilty plea can affect that. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you want to go forward anyway?
>
> THE DEFENDANT: Yes, sir.

Id. at 23-24.

The court took the guilty plea and plea agreement under advisement pending sentencing, which took place a few months later on July 15, 2015. At sentencing, the court asked defense counsel about immigration proceedings.

> THE COURT: Do you know whether immigration has taken any action with regard to Mr. Peralta?
>
> MR NAGY: At this time, I do not believe that they have taken any action. I do not believe that there is a detainer pending against

3

> him. I've talked to Mr. Peralta about this several times, and he understands. We've talked about the fact that we don't know exactly what immigration is necessarily going to do with him, but obviously, there is some hope that the factors of what has happened here will be taken into consideration at some point down the line. But he understands that this proceeding is a separate, distinct and independent proceeding from anything that's going to take place with regard to immigration at a later date.
>
> THE COURT: And you've had those discussions with him, that this guilty plea could result in adverse immigration consequences.
>
> MR. NAGY: Yes. Again, he understands that. He certainly hopes that that is ultimately not going to happen, particularly in light of the fact that he has lived in this country legally since he was basically 15 or 16 years old. But he does understand that immigration has its own agenda and that is a separate proceeding from this matter in front of the Court today.

Sentencing Hr'g Tr., ECF No. 33, at 9. The court again addressed Cabrera-Peralta directly on this subject.

> THE COURT: Mr. Peralta, you understand that this felony conviction could have some consequences on your ability to retain your green card and stay here in the United States?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Because you are not – you're a resident alien, but you are not a citizen of the United States, and you understand. I don't know whether it's going to have any impact on it or not, but it could. You've had those discussions with your lawyer?
>
> THE DEFENDANT: Yes, sir.

Id. at 10. Following allocution, during which Cabrera-Peralta stated "hopefully, I'll be able to stay in the United States," id. at 11, the court accepted the guilty plea and plea agreement and sentenced Cabrera-Peralta to the agreed-upon 44-month term of imprisonment. Id. at 12.

Four years later, on March 19, 2019, Cabrera-Peralta filed a Petition for Writ of Error Coram Nobis substantially the same as the present petition. ECF No. 23. The court conditionally filed the petition as a motion to vacate his judgment pursuant to 28 U.S.C. § 2255 and directed him to respond to the conditional filing order by either advising the court that he did not want to proceed by § 2255 or to complete and return a § 2255 petition form. Cabrera-Peralta did neither, and the court dismissed his petition without prejudice on May 7, 2019. Order, ECF No. 25.

Cabrera-Peralta filed the same coram nobis petition two years later, on March 25, 2021. ECF No. 26.

## II.

The authority of a federal court to grant a writ of coram nobis is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" United States v. Denedo, 556 U.S. 904, 911 (2009) (quoting the All Writs Act, 28 U.S.C. § 1651). The Act "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Pa. Bureau of Corr. v. United States Marshal Serv., 474 U.S. 34, 43 (1985).

A writ of error coram nobis is a remedy of last resort, available "only where an error is 'of the most fundamental character' and there exists no other available remedy." United States v. Akinsade, 686 F.3d 248, 252 (4th Cir. 2012) (quoting United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988)). In order to obtain such relief, a defendant must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction

5

earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Id. (internal quotation marks omitted) (citing Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987)).

Cabrera-Peralta fails to meet the requirements for coram nobis relief. First, while Cabrera-Peralta waived his right to file a collateral attack on his criminal judgment in his plea agreement, an exception to that waiver existed for a collateral attack based on ineffective assistance of counsel, such as he has raised herein. But Cabrera-Peralta never filed a § 2255 petition challenging his conviction based on ineffective assistance of counsel. Second, Cabrera-Peralta provides no reason for not raising his ineffective assistance claim earlier. And third, Cabrera-Peralta's claim of error is factually groundless, much less representing error so fundamental that the extreme remedy of coram nobis is required. As the Fourth Circuit noted in Bereano v. United States, 706 F.3d 568, 576-77 (4th Cir. 2013),

> [The fundamental] terminology derives from a Supreme Court decision of long standing, where the Court emphasized that an error "of the most fundamental character" is one that has "rendered the proceeding itself irregular and invalid." United States v. Mayer, 235 U.S. 55, 69 (1914). More recently, the Court explained the circumscribed use of coram nobis when it directed that "judgment finality is not to be lightly cast aside; and courts must be cautious so that the extreme remedy of coram nobis issues only in extreme cases." Denedo, 556 U.S. at 916.

Cabrera-Peralta pled guilty pursuant to a written plea agreement which expressly stated that "I may be subject to deportation from the United States as a result of the conviction for the offense(s) to which I am pleading guilty." ECF No. 6, at 7. At his guilty plea hearing, Cabrera-Peralta's counsel indicated that he had discussed with his client that the guilty plea could put

his immigration status in the United States in jeopardy. ECF No. 32, at 22. The court directly questioned Cabrera-Peralta about his understanding that his guilty plea could affect his ability to remain in the United States. Id. at 23-24. The court took the guilty plea and plea agreement under advisement and the issue of his ability to remain in the United States as a resident alien was again addressed by defense counsel at the sentencing hearing conducted a few months later. ECF No. 33, at 9. The court again directly addressed Cabrera-Peralta on this issue. In response to the court's questions, Cabrera-Peralta stated that he had discussed with his lawyer the impact of this conviction on his green card status and his ability to remain in the United States. Id. at 10. Based on this record, Cabrera-Peralta is unable to make any showing that his plea agreement and guilty plea proceeding were either irregular or invalid. "When a defendant seeks to vacate a guilty-plea conviction by way of coram nobis, great caution is warranted." United States v. George, 676 F.3d 249, 257 (1st Cir. 2012). "This is because 'words have meaning,' and an error of the most fundamental character–as must be found before coram nobis relief can be granted–must, at a minimum, amount to 'more than a factual insufficiency that the petitioner's voluntary decisions may have caused.'" Reed, 2016 U.S. Dist. LEXIS 83445, at *16 (quoting George, 676 F. 3d at 258).

Finally, Cabrera-Peralta is not automatically entitled to coram nobis relief merely because he is no longer in custody. If that were the case, every criminal defendant would be able to circumvent the prohibition on second or successive § 2255 petitions by challenging his conviction once while in custody and again immediately upon completing his sentence. See Bernardi v. United States, 171 F. App'x 387, 389 (3d Cir. 2006) (per curiam) (unpublished) (stating that a defendant is not entitled to coram nobis relief "merely because he has previously

suffered an adverse decision in a § 2255 proceeding, has been unsuccessful in his numerous endeavors to obtain authorization to file a second or successive § 2255 motion, and is now no longer in custody for purposes of § 2255"). Coram nobis relief is rarely granted and is generally unavailable where a defendant seeks to assert claims that were, or that could have been, raised through a § 2255 motion. See Akinsade, 686 F.3d at 252. The Supreme Court has stated that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

In sum, Cabrera-Peralta has not met the requirements for the extreme remedy of coram nobis, and his petition must be denied. An appropriate order will be entered.

Entered: December 7, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.12.07 11:35:58 -05'00'

Michael F. Urbanski
Chief United States District Judge